IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TINA NUNES | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, Commissioner | : | NO. 04-6005 |
| of the Social Security Administration, | : | |
| | : | |
| Respondent | : | |

**MEMORANDUM**

**Baylson, J.**                                                                                               **February 9, 2006**

Plaintiff Tina Nunes ("Plaintiff" or "Nunes") seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33, 1381-83 ("the Act"). Presently before this Court are the parties' cross-motions for summary judgment.

**I.      Background and Procedural History**

Plaintiff was born on July 17, 1963. (R. at 89). Plaintiff's primary previous work experience is as a waitress, and the highest grade of school she completed was the tenth grade. (R. at 96, 101). Plaintiff is single, and has a five year old grand-daughter who stays with her part-time. (R. at 26, 38-39).

On March 25, 2002, Nunes filed concurrent applications for DIB and SSI alleging disability as of March 14, 2002, due to degenerative disc disease. (R. at 11, 76). After Plaintiff's claim was initially denied, and she subsequently failed to appear at the hearing scheduled to

review that decision, an Order of dismissal was issued on May 5, 2003. (R. at 11, 49-52). Thereafter, on July 2, 2003, Nunes filed the instant concurrent applications for SSI and DIB, asserting she was disabled under the meaning of the Act as of March 14, 2002, due only to "bulging discs in lower back," or degenerative disorders of the lumbar spine. (R. at 76-78, 95, 271-73). Following an initial denial by the Social Security Administration, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 11, 57-61, 276-79). A hearing was held before ALJ George C. Yatron ("ALJ Yatron") on July 8, 2004 (R. at 24-48), at which Plaintiff also gave testimony indicating she was suffering from a mental disability as well. (R at 36-37). On August 16, 2004, ALJ Yatron issued a decision denying Plaintiff's application, concluding she was not disabled and could perform other light unskilled work in the national economy. (R. at 11-17). After the Appeals Council denied Plaintiff's request for review (R. at 4-7), Plaintiff sought judicial review of the Commissioner's decision in this Court. She filed a motion for summary judgment on October 25, 2005 (Doc. No. 10) and Respondent, the Commissioner of the Social Security Administration ("Commissioner"), filed a cross-motion for summary judgment on December 12, 2005 (Doc. No. 12).

      **A.**      **History of Treatment**

Plaintiff asserts that she has been unable to work since March 13, 2002, due to a fall at work that injured her back. (R. at 28, 30). Then on June 22, 2002, she exacerbated her back injury in a car accident, which caused an arm problem as well. (R. at 30). Nunes indicated that she can not sit or stand too long (15-20 minutes, and 10-15 minutes, respectively), that she has muscle spasms in her legs, which cause them to go numb, and in her shoulders that radiate into her arms and fingers. (R. at 29-30, 95). She testified that her fiancé does the majority of the

housework due to her limitations. (R. at 41)

Medical records indicate that Nunes was treated by a Dr. Rodriguez at Berks Family Care from April 25, 2002 to July 6, 2003. (R. at 30, 117-162). Nunes repeatedly complained of back pain, was prescribed Bextra, Flexeril, Motrin, and Vioxx and was referred to physical therapy up to three times a week. (R. at 30-32, 118, 120, 122, 126, 129, 132, 137-143, 145, 147, 150-51, 160-61).[1] Plaintiff also testified that she was treated by a Heidi Pendleton at Eagle Chiropractic roughly three times a week for about a year and a half, although treatment records are only from August 22, 2002 through November 21, 2002. (R. at 13, 32-34, 174-270). The chiropractor's "daily notes" indicate she received manipulative treatments for neck pain, middle and lower back pain, and hip pain. Finally, Plaintiff testified that she had just begun seeing a pain specialist, and that she had an MRI in 2002 or 2003 showing a bulging disk her back. (R. at 34-35). Neither treatment notes from the pain specialist nor the MRI results were included in the record, however.

With regard to pain, Plaintiff testified that during her treatment tenure with Dr. Rodriguez, she had pain at a level of nine, on a scale of one to ten, and during treatment with Dr. Pendleton, she frequently rated her pain as a seven or eight, and, finally, at the time of the hearing before ALJ Yatron, Nunes testified it was a ten. (R. 30-32, 174-76, 197-201, 208-213, 217-221, 235-44, 252, 257, 270).

A Physical Residual Functional Capacity Assessment completed by A. Bashore, a State Agency Disability Examiner on July 30, 2003 concluded that Plaintiff has the residual functional

---

[1]For example, she was treated for back pain "shooting down both legs, and 'numbness' in her arms" (R. at 160), on February 21, 2003 for "severe back pain" (R. at 146-47), and on February 26, 2003 for "severe back spasm." (R. at 144-45)

capacity ("RFC") to perform light or sedentary work. (R. at 13, 168-173). The State Examiner concluded Plaintiff's daily activities were not significantly limited by her alleged symptoms, that she had engaged in conservative treatment, had not received treatment from a specialist and did not attend physical therapy. (R. at 173).

Plaintiff also claims of feeling persistently depressed and anxious since the March 2002 accident at work, and testified that Dr. Rodriguez prescribed anti-depressant and anti-anxiety medications (R. 31, 36-37). Records of treatment by her general practitioner corroborate that she consistently complained of anxiety of depression, and was prescribed Paxil, Lexapro, and Klonopin. (R. at 13, 139, 141-42, 145, 151-53, 155-59, 161). Dr. Rodriguez' notes reflect that Plaintiff reported that she was going to "Creative Health" for counseling (R. at 142), and during testimony before ALJ Yatron, Nunes stated she had been seeing a therapist, an Audrey Lefler, once a week for two years, which "helps . . . but doesn't solve [her] problems." (R. at 37). No treatment notes from a mental health professional, or a psychiatric evaluation, were included in the record.

## II.     Contentions of the Parties

In her Motion for Summary Judgment, Plaintiff asserts that the ALJ erred in failing to adequately address her mental impairment. (Pl.'s Mot. Summ. J. at 1). Specifically, she argues the ALJ addressed her mental impairments "in a dismissive manner," and that treatment by a family physician, even if not a mental health professional, is still to be given significant if not controlling weight. Moreover, she contends the ALJ's written decision omitted the required detailed review of evidence relating to a psychiatric impairment, such as a Psychiatric Review Technique form ("PRT"), and that the effect of her mental impairments were not included in the

hypothetical to the vocational expert. (Pl.'s Mot. Summ. J. at 1-2). Plaintiff also summarily argues the ALJ failed to evaluate the substantial evidence of physical impairment which would lead to a finding of disability, but offers no further contentions in support of this argument. (Pl.'s Mot. Summ. J. at 1).

The Commissioner counters that the ALJ evaluated all the evidence in the record, and had substantial evidence to conclude that the Nunes was not disabled. Specifically, given the large gaps in treatment records with regard to her alleged mental illness, Plaintiff failed to meet her burden that her psychological limitations preclude gainful work. The Commissioner further argues that the ALJ clearly considered the mental health evidence in the record, including notes from her family doctor and Plaintiff's own complaints. Moreover, the ALJ properly evaluated Nunes' mental health impairment under the listings and provided an explanation in line with the PRT in coming to the conclusion that she is not disabled. (Resp.'s Mot. Summ. J. at 5-7).

**III.    Legal Standard**

The standard of review of an ALJ's decision is plenary for all legal issues. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 421 (3d Cir. 1999). The scope of the review of determinations of fact, however, is limited to determining whether or not substantial evidence exists in the record to support the Commissioner's decision. Id. As such, "[t]his Court is bound by the ALJ's finding of fact if they are supported by substantial evidence on the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where "an agency's fact finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986). "Substantial evidence does not mean a large or considerable amount of evidence but rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

**IV.     Discussion**

To determine whether an individual is disabled, the regulations proscribe a five-step analysis. 20 C.F.R. § 404.1520(a); Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004). The fact-finder must determine: (1) if the claimant currently is engaged in substantial gainful employment; (2) if not, whether the claimant suffers from a "severe impairment;" (3) if the claimant has a "severe impairment," whether that impairment meets or equals those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and thus are presumed to be severe enough to preclude gainful work; (4) whether the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment; and (5) if not, whether the claimant is capable of performing other jobs existing in significant numbers in the national economy in view of the claimant's age, education, work experience and RFC. Id.  If there is an affirmative finding at any of steps one, two, four or five, the claimant will be found "not disabled." 20 C.F.R. § 404.1520(b)-(f). See also Brown v. Yuckert, 482, U.S. 137, 140-42 (1987).  The Plaintiff carries the initial burden of demonstrating by medical evidence that he is unable to return to his former occupation. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).  Once the Plaintiff has done so, the burden shifts to the Commissioner to show the existence of substantial gainful employment the claimant could perform.  Id.

In reviewing the evidence in this case, the ALJ made the following nine findings in concluding that Plaintiff was "not disabled":

1. Plaintiff has not performed any substantial gainful activity since the alleged date of

   disability of March 14, 2002;
2. Plaintiff met the disability insured status requirements of the Act on her alleged disability onset date and continues to;
3. Her impairments are "severe";
4. Plaintiff's impairments, singly or in combination, do not meet or equal the disability severity criteria in Appendix 1, Subpart P, of Regulations No. 4;
5. Plaintiff's subjective complaints are not wholly credible, in that her impairments do not preclude her from the performance of any and all substantial gainful activity;
6. Plaintiff has the RFC to perform unskilled work of a light or sedentary nature;
7. Plaintiff can not perform her past relevant work, which was semi-skilled.
8. The vocational expert has credibly testified that there are a significant number of jobs that the claimant could perform; and
9. Thus, the Plaintiff has not established "disability" under the Act.

(R. at 16). In making these findings, the ALJ thus concluded that Plaintiff's problems were "severe" impairments. (R. at 12). In fact, she found that these impairments were severe enough to keep her from doing his job as a waitress, but that Plaintiff's complaints that these conditions were totally disabling were "not wholly credible" (R. at 14). Instead, the ALJ found that she still had the ability to perform unskilled work of a light or sedentary nature (R. at 15). Further, the ALJ concluded that based on this RFC, as well as her age, education and work experience, Nunes is capable of performing other less strenuous jobs existing in significant numbers in the national economy (R. at 15).

In reviewing the ALJ's decision, the Court holds that the ALJ's findings were based on substantial evidence.

   A. <u>The ALJ Adequately Evaluated the Plaintiff's Mental Impairments</u>

Plaintiff challenges that the ALJ erred by failing to adequately evaluate his mental impairment and resulting functional limitations. (Pl.'s Mot. Summ. J. at 1-2). The Commissioner argues that the ALJ clearly considered all the mental health evidence in the record, including her subjective complaints and records from the family doctor. However, medical documentation was

extremely limited and included nothing from a mental health professional. Additionally, the Commissioner contends the ALJ's written opinion contained a detailed analysis of Nunes' mental health impairment, and properly concluded it was no more than moderate. (Resp.'s Mot. Summ. J. at 5-7).

With regard to mental impairments in particular, 20 C.F.R. §§ 404.1520a and 416.920a dictate that the ALJ must examine the claimant's functioning in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Allen v. Barnhart, 417 F.3d 396, 400 (3d Cir. 2005); Ramirez, 372 F.3d at 551. When rating the degree of limitation in the first three functional areas, the ALJ is to use a five-point scale: none, mild, moderate, marked, and extreme. When considering the fourth functional area, the ALJ should apply a four-point scale: none, one or two, three, and four or more. 20 C.F.R. §§ 404.1520a(c)(3)-(4) and 416.920a(c)(3)-(4). However, if the ALJ rates the first three functional areas as "none" or "mild" and "none" in the fourth area, the ALJ will generally conclude that the alleged impairment is not severe. Id. at §§ 404.1520a(d)(1) and 416.920a(d)(1). In making these determinations, the ALJ has a duty to consider carefully all evidence of mental health impairment in the record. Fouch v. Barnhart, 80 Fed. Appx. 181, 185 (3d Cir. 2003) (non-precedential opinion). Finally, the ALJ's written decision must show the significant history and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s) and must include a specific finding as to the degree of limitation in each of the functional areas. 20 C.F.R. at §§ 404.1520a(e)(2) and 416.920a(e)(2);

Here, substantial evidence supports the ALJ's decision regarding Plaintiff's mental

impairment. The ALJ's written decision adequately details the significant history and the functional limitations that were considered in reaching his conclusion. First, the ALJ's decision includes a specific finding as to the degree of limitation in each of the functional areas. The ALJ considered the evidence on record and Plaintiff's testimony at the hearing, and found that Plaintiff's alleged depression and anxiety resulted in no more than "moderate" limitation of her activities of daily living, social functioning, and concentration, persistence and pace and found no episodes of decompensation, extended or otherwise. (R. at 15).[2]

Second, the Court disagrees with Plaintiff's contention that her family physician's treatment notes regarding her mental condition should have been given significant if not controlling weight. Without supporting objective evidence, a medical source opinion — even one opining whether an individual is able to work — is "never entitled to controlling weight or special significance." S.S.R. 96-5p. See also 20 C.F.R. §§ 404.1527 and 416.927 (outlining policy in evaluating medical source opinions). Further, the ALJ in some detail discussed Dr. Rogdriguez' records supporting the conclusion that Plaintiff was depressed and anxious and has been prescribed anti-depressant and anti-anxiety medications. However, the records indicate little more than this conclusory diagnosis (numerous notations simply state Plaintiff was "depressed" and/or "anxious"), making no attempt to opine on the cause, severity or duration of the condition or impact on Nunes' ability to work. Moreover, ALJ Yatron noted the "glaring paucity of medical evidence in the record," regarding the psychological impairment. He specifically pointed out the lack of records from mental health specialists which could have

---

[2]The ALJ is no longer required to complete the Psychiatric Review Technique form alluded to by Plaintiff, so long as his findings are recorded in the decision. 20 C.F.R. §§ 404.1520a, 416.920a.

corroborated Plaintiff's complaints, including the therapy sessions about which Plaintiff testified or a psychiatric evaluation.

Finally, the ALJ also considered Plaintiff's subjective complaints. It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. Apfel, 186 F.3d at 429; Mason v. Shalala, 99 F.2d 1058, 1066 (3d Cir. 1993). Hence, an ALJ's credibility determinations are entitled to great deference and should not be discarded lightly, given his opportunity to observe an individual's demeanor. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). Here, before concluding that Plaintiff had the RFC to undertake unskilled, light work, the ALJ also considered Plaintiff's subjective complaints of depression and anxiety. The ALJ concluded that while Plaintiff was prescribed psychotropic medication by her family doctor, her assertions concerning the intensity and limiting effects of her symptoms were "not wholly credible" in light of the lack of additional supporting medical documentation. (R. at 14-15). In sum, the ALJ did not deny that Plaintiff has limitations due to mental illness, but, weighing all the evidence in the record, merely concluded the condition was not severe enough to interfere with all work activities (R. at 15). Thus, this Court concludes that the ALJ adequately evaluated Plaintiff's mental impairment and resulting functional limitations and the ALJ's findings with regard to her mental impairments were supported by substantial evidence.[3]

---

[3]As mentioned *supra*, Plaintiff also summarily contends that the ALJ "failed to evaluate the substantial evidence of physical impairment which would lead to a finding of disability." (Pl.'s Mot. Summ. J. at 1). However, in the remainder of her two page brief in support of summary judgment, Plaintiff makes no other reference whatsoever to the ALJ's analysis of her physical impairments. Nonetheless, it is clear that there is substantial evidence to support the ALJ's conclusions. Contrary to Plaintiff's contention that the ALJ "failed to evaluate" the evidence, he clearly conformed to the required five-step analysis, specifically weighing the

B.  The ALJ's Hypothetical Question to the Vocational Expert Properly Accounted for
All of the Plaintiff's Functional Limitations

At the fifth and final step of the analysis, Plaintiff challenges the sufficiency of the ALJ's hypothetical to the vocational expert ("VE").  Nunes asserts the question was insufficient because it did not encompass all of her functional limitations, specifically the "moderate" mental limitations acknowledged by the ALJ in his opinion. (Pl.'s Mot. Summ. J. at 2).  Defendant contends the hypothetical, which included an accommodation for her mental condition, eliminating jobs requiring detailed instructions, was sufficient. (Def.'s Mot. Summ. J. at 10).

Testimony of a VE constitutes substantial evidence for purposes of judicial review only where the hypothetical question posed by the ALJ fairly encompasses *all* of an individual's significant limitations that are supported by the record. Ramirez, 372 F.3d at 552; Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  Further, "great specificity" is required when an ALJ incorporates a claimant's limitations into a hypothetical.  Ramirez, 372 F.3d at 554-55 (citing Burns v. Barnhart, 312 F.3d 113, 122 (3d Cir. 2002)).

Here, the ALJ's hypothetical was as follows:

---

medical evidence against Plaintiff's subjective complaints.  The ALJ's conclusions discounting the complaints of pain are supported by the record.  He correctly noted Nunes has given a very limited account of her activities of daily living and there was no medical evidence to corroborate her testimony that she sees a pain management specialist or had an MRI in 2002 or 2003 documenting the back ailment.  Further, after considering the treatment notes of both Dr. Rodriguez and the chiropractor, the ALJ finds Plaintiff has undertaken a very conservative course of treatment given the alleged severity of her pain.  Second, the ALJ's opinion references the opinion of the State Agency Disability Examiner, a medical doctor who concluded Plaintiff was capable of light or sedentary work.  While generally ALJs are to give more weight to opinions from treating sources, 20 C.F.R. § 404.1527(d)(2), an ALJ is not forbidden from affording weight to non-treating state agency medical consultants' opinions. Garcia v. Barnhart, 2005 U.S. Dist. LEXIS 19579, at *3 (E.D. Pa. Sept. 6, 2005); S.S.R. 96-2P, 1996 WL 374188 at *2.  In sum, the ALJ made no error with regard to analysis of Plaintiff's physical impairments.

> I would like you to consider hypothetically an individual approximately 41 years of age, the training and education and experience as in the present case, who's able to lift 20 pounds, stand and walk six hours in an eight-hour day, sit for six or more hours in an eight-hour day; non-exertional limitations, no detailed instructions. Given those facts and circumstances, is there any work the hypothetical individual could perform on a sustained basis?

(R. at 15). The Court is satisfied that this question, although somewhat cryptic, meets the requirements set out in <u>Ramirez</u> and adequately takes into account all of Plaintiff's limitations that are supported by the record. First, the hypothetical accounts for the claimant's age, education, and work experience, as the fifth step of the disability analysis requires. 20 C.F.R. § 404.1520. Second, the question encompasses Plaintiff's specific functional limitations. Following the recommendation of the Residual Functional Capacity Assessment, the hypothetical question takes into account Plaintiff's exertional limitations: restricting Plaintiff's lifting ability to 20 pounds, her ability to stand and walk to six hours in an eight-hour day, and her ability to sit for six hours in an eight-hour day. Moreover, despite finding Plaintiff's complaints about the severity of her psychological problems not wholly credible the hypothetical still omitted jobs which would have involved the ability to carry out detailed instructions, an accommodation for her "no more than moderate" psychologically-based symptoms. Accordingly, we find no error in the hypothetical question posed by the ALJ.

      C.  <u>Answer to Show Cause for Delay</u>

Shortly before filing her Motion for Summary Judgment, on October 19, 2005, Plaintiff's Counsel filed an Answer to Show Cause for Delay (Doc. No. 9). This filing responded to an August 10, 2005 (Doc. No. 8) order by the undersigned, requiring Plaintiff to file a Motion for Summary Judgment, together with a Motion for Leave to File a Motion for Summary Judgment

Out of Time by August 24, 2005. Because Plaintiff did not in fact comply with this order — filing two full months after this deadline — Plaintiff seeks to explain her reasons for delay. Plaintiff's counsel explains that he is a solo practitioner who has been ill with several conditions for over sixteen months that caused him to be delayed in presenting the Motion for Summary Judgment. He urges that the interests of justice would best be served by a decision on the merits. Based on the foregoing explanation, this Court will grant the Motion so that the case can be decided on the merits.

On December 12, 2005, the Commissioner also filed a Motion for an Enlargement of Time to File the Defendant's Motion for Summary Judgment (Doc. No. 11), having for unexplained reasons not received Plaintiff's Motion for Summary Judgment until November 10, 2005, sixteen days after it was filed. As this motion was unopposed by Plaintiff's counsel, it too will be granted.

### V. Conclusion

For the foregoing reasons, this Court concludes that the ALJ adequately evaluated the Plaintiff's mental impairments and that substantial evidence supports the ALJ's determination that Plaintiff has the residual functional capacity to perform unskilled, light work. Accordingly, the Commissioner's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TINA NUNES | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | : | NO. 04-6005 |
| | : | |
| Respondent | : | |

## ORDER

AND NOW, this **9th day of February, 2006**, after careful and independent consideration of the parties' cross-motions for summary judgment, and review of the record, it is hereby ORDERED that:

1. The Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED

2. The Commissioner's Motion for Summary Judgment (Doc. No. 12) is GRANTED;

3. Plaintiff's Answer to Show Cause for Delay (Doc. No. 9) is GRANTED;

4. Defendant's Motion for an Enlargement of Time to File her Motion for Summary Judgment (Doc. No. 11) is GRANTED;

5. Judgment will be entered in favor of Defendant and against Plaintiff; and

6. The Clerk shall mark this case CLOSED.

**BY THE COURT**:

/s/ Michael M. Baylson

_____

**MICHAEL M. BAYLSON, U.S.D.J.**